IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| HELEN R. THOMPSON, an Individual;<br><br>  Plaintiff,<br><br>  v.<br><br>OMAHA PUBLIC POWER DISTRICT, a political division of the State of Nebraska;<br><br>  Defendant. | 8:13CV106<br><br>**MEMORANDUM AND ORDER** |

This matter is before the court on the defendant's motion for summary judgment, Filing No. 24, and the defendant's objection to plaintiff's affidavit and attached condition reports, Filing No. 35.[1] This is an action for discrimination in employment under the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), the Age Discrimination in Employment Act, 42 U.S.C. § 623 ("the ADEA"), the Nebraska Fair Employment Practices Act, Neb. Rev. Stat. § Neb. Rev. Stat. § 48-1101, *et seq.*, ("the NFEPA") and the Nebraska Age Discrimination in Employment Act, Neb. Rev. Stat. § 48-1001, *et seq.* ("NADEA"). The plaintiff primarily alleges that OPPD failed to promote her because of her age, race, and gender.[2] She is an African American woman over the age of fifty.

---

[1] Also pending is an improperly denominated "motion," which is in fact a response to the defendant's motion, Filing No. 30. The clerk of court is directed to terminate that motion. The court finds the defendant's objection to the plaintiff's affidavit and attachments (Filing No. 35) should be denied as moot. In making its determination, the court did not rely on the evidence, which is only marginally relevant to the issues herein.

[2] In her brief in opposition to the motion, she states that her "dispute with OPPD is centered on the Company's failure to promote her."  See Filing No. 30, Plaintiff's Opposition to OPPD's Motion for Summary Judgment ("Opposition Brief") at 1. OPPD characterizes this statement as an abandonment of her claims of "failure to train" and discrimination in the terms and conditions of her employment. The court does not view it as such. The plaintiff's claims of discriminatory "failure-to-train" and discrimination in the terms and conditions of her employment are not free-standing claims, but provide background and support for the failure to promote claims. Evidence of failure to train or of allegedly discriminatory or harassing behavior by OPPD personnel is relevant to the failure to promote claims and to mens rea. The

Defendant argues that the plaintiff cannot establish a prima facie failure-to-promote claim because she has not shown she was a qualified candidate for the positions. OPPD also argues that, if she has established a prima facie case, it has articulated a nondiscriminatory reason for its actions—other candidates were more qualified.

I.   FACTS

The parties agree to the following uncontroverted facts. *See* Filing No. 27, OPPD Brief at 5-6; Filing No. 30, Plaintiff's Opposition Brief at 3 n.2; Filing No. 32, OPPD Reply Brief at 2-5. The plaintiff began her employment at OPPD as a Chemistry Technician and held that position for four years. She was promoted to Senior Chemistry Technician in or around 1994, and to the position of Chemist I in or around 2000. Other than supervisory positions, the Chemist position is the top position within the Chemistry Department. The plaintiff's supervisor is Timothy Dukarski, Chemistry Supervisor. Mr. Dukarski's supervisor is Kenneth Kingston, Chemistry Manager.

The record shows that the plaintiff applied for numerous jobs that were either lateral transfers or promotions at OPPD. Filing No. 26, Index of Evid., Ex. 6, Affidavit of G. Michael Riva ("Riva Aff.") (Supervisor of Maintenance position), Ex. 7, Affidavit of Vickie Lien ("Lien Aff.") (Supervisor of Maintenance Training position), Ex. 8, Affidavit of Affidavit of Phil Mruz ("Mruz Aff.") (Senior Production Planner – Maintenance position), Ex. 9, Affidavit of Mark Puckett ("Puckett Aff.") (Senior Production Planner – Scheduler position), Ex. 10, Affidavit of Randy Howell ("Howell Aff.") (Procedure Writer), Ex. 11, Affidavit of Michael Ferm ("Ferm Aff.") (Corrective Action Program Coordinator

---

alleged failure to train or groom the plaintiff for promotion, while offering such opportunities to others, is part and parcel of the failure-to-promote claims.

("CAPCO") positions).  She was only selected to be interviewed for three of the positions.  *See id.,* Ex. 1, Deposition of Helen Thompson ("Thompson Dep.") at 218 (Senior Production Planner - Scheduling), 222 (Procedure Writer), 228 (CAPCO).

The plaintiff has an Associate's Degree in Chemistry, but has completed training by OPPD and her other employers.  Filing No. 26, Index of Evid., Ex. 2, Thompson Dep. at 172; Ex. 26, Plaintiff's Training Records.  Plaintiff has also completed other courses through OPPD, including courses on organizational skills, handling conflict, and cyber security.  *Id.* at 174-75.  There was also evidence that younger white males were selected for training on management and leadership skills and Thompson was not.  *Id.* at 260.  Tad Leeper, Human Relations ("HR") Manager at the Fort Calhoun Nuclear Station testified by deposition that leadership training is not available to everyone—the company focuses on "developing our high potential leaders in the organization."  Filing No. 130, Ex. A, Leeper Dep. at 54.  Employees have access to role-specific training if the employee requests it or his or her boss requests it.  *Id.* at 55.   Thompson contends she asked Dukarski for training and it was not provided.  Filing No. 126, Index of Evid., Ex. 28, EEOC charge at 2; Ex. 2, Thompson Dep. at 165-170. .

The record shows that OPPD bases its hiring decisions, in part, on whether an employee is a "good fit," the hiring manager's personal knowledge of the individual, work samples, past personnel evaluations for previous years, and consultation with the current supervisor.[3]  Filing No. 30, Ex. A, Deposition of Ted Leeper ("Leeper Dep.") at 63-65. Leeper testified that the hiring process has several steps.  *Id.* at 13-17.  The first

---

[3] The plaintiff's supervisor testified that OPPD has no process "in place for supervisors to follow when making [performance] assessments," instead assessments are based on a supervisor's subjective perception.  Filing No. 30, Ex. B, Deposition of Timothy Dukarski ("Dukarski Dep.").

3

step is a pre-hire huddle meeting, at which the hiring manager, who would be the line manager with a vacancy in his or her department, and a representative of HR agree on the process, time frames, and initial application screening criteria.  *Id.* at 13, 16.  The pre-hire huddle is followed by an initial screening which is an automated process that screens out the applicants without necessary requirements.  *Id.* at 13–14.

      Leeper testified that the hiring manager then further reduces the number of candidates using his or her own criteria.  *Id.* at 14.  The hiring manager is to electronically document the reason for considering one candidate over another in the PeopleSoft system by choosing one of a number of "compliant responses" in a drop down menu.  *Id.* at 14, 26.  Interviews are then conducted under the "behavioral interviewing process."  *Id.* at 12.  Leeper states that behavior-based questions are premised on the fact that the best predictor of future performance is past performance under similar circumstances.  *Id.*  He also stated in his deposition that the candidates chosen for an interview all meet minimum qualifications for the position.  *Id.* at 15.

      Leeper also testified that the staffing specialist reinforces with the hiring manager that OPPD's organization is committed to hiring in a fair and consistent and compliant way.  *Id.* at 46.  In certain circumstances, OPPD has an HR professional as part of the interview team to help ensure that appropriate questions are asked.  *Id.* at 48–49.  He also testified that the company has an affirmative action plan and "if [OPPD] sees an opportunity to improve [its] hiring of women and minorities" in a position that is underutilized on the basis of race or gender as mathematically derived from the Metropolitan statistical area talent pool, "all things being equal, why wouldn't we want to

4

do that?" *Id.* at 17-19. In that circumstance, "HR may encourage that manager to make a decision that is supportive of [OPPD's] affirmative action plan." *Id.* at 18.

In October 2011, Thompson's resume was forwarded to hiring manager Phil Mruz for the position of Senior Production Planner – Maintenance, after having been screened by the automated process. *See id.*, Ex. 8, Mruz Aff. at 2; Filing No. 30, Plaintiff's Opposition, Ex. A, Leeper Dep. at 13-14. Mruz determined that Thompson's resume "should have been screened out by Human Resources before [it was] provided to [him] because [she] did not have the requisite experience to perform the job" in that she "did not have the minimum mechanical or planning experience that was required for the position." Filing No. 26, Index of Evid., Ex. 8, Mruz Aff. at 2. Thompson was not interviewed. Id. Based on his "interview and his applicable experience, which included machinist and planning experience, as well as knowledge of the Asset Suite computer program," Damian Gomez, a Hispanic male older than the plaintiff, was hired for the position. *Id.* at 2-3; see Ex. 2, Thompson Dep. at 215. Thompson testified that she believes she had the minimum qualifications for the position. *Id.* at 216-17.

In November 2011, Thompson was interviewed for the position of Procedure Writer and scored well in her interview. *Id.*, Ex. 10, Howell Aff. at 2. She ranked higher on OPPD's scored interview than Jennifer Collier, a younger white female. *Id.*; *see also id.*, Ex. 2, Thompson Dep. at 257-58. Thompson testified she had experience writing, generating, and developing procedures. *Id.,* Ex. 2, Thompson Dep. at 227. Although Collier had worked in the procedure maintenance group, she performed more of a word-processing function than actual development of procedures. *Id.* at 227, 256. Collier was offered the position based on her resume and the hiring manager's experience

5

working with her and the fact that "she had previous knowledge of the Procedure Writer position and had worked beside other Procedure Writers for years." *Id.*, Ex. 10, Howell Aff. at 2.

The plaintiff was one of four candidates selected to interview for the position of Senior Production Planner – Scheduler in May 2012. *Id.*, Ex. 9, Puckett Aff. at 2. The interview team determined that Tera Kuhr was the most qualified candidate based, in part, on the fact that she had prior scheduling experience. *Id.* Kuhr had the highest interview score among the candidates. *Id.*

Michael Ferm, Manager of System Engineering, testified by deposition that he was part of the team that hired Corrective Action Program coordinators (referred to as CAPCO positions) in 2012. *Id.*, Ex. 5, Deposition of Michael Ferm ("Ferm Dep.") at 20. CAPCO positions were new positions at OPPD designed to set the standard for excellence within each department and to ensure the department managers executed their responsibilities in a timely and strategic manner. *Id.*, Ex. 11, Ferm Aff. at 1. There were nine open CAPCO positions, each to provide oversight to a different department. *Id.* at 2. Ultimately, eight positions were filled because the radiation protection department and chemistry department positions were combined into a single position. *Id.* at 2. Ferm testified that he determined that a CAPCO candidate could not be placed as a CAPCO in the department from which the candidate came. *Id.* This decision meant that Helen Thompson was not eligible for the chemistry CAPCO position. *Id.*, Ex. 5, Ferm Dep. at 28-29. Thompson testified she was qualified for the radiation protection, chemistry and station CAPCO positions. *Id.*, Ex. 2, Thompson Dep. at 229.

6

The CAPCO interview team, consisting of Zach LaPlante, Cindy Fellman, and Michael Ferm, interviewed twenty-seven candidates for the CAPCO positions, including the plaintiff. *Id.*, Ex. 11, Ferm Aff. at 2. Thompson was not offered a position. *Id.* Ferm stated in his affidavit that the interview team did not believe the plaintiff was as qualified for the positions as Matt Cole, Garfield Coleman, or Charity Bettell, who were offered CAPCO positions. *Id.* at 4-5. Ferm testified that after looking at the resumes for the CAPCO positions, he determined that he could not rule anybody out and that no one had the skills he was really looking for, so he would have to hire people based on their attitude in their ability to learn and their courage and leadership. *Id.* at 32. The eight individuals that were hired for the CAPCO positions were: Charity Bettell, Joseph Clements, Matt Cole, Garfield Coleman, Chris Heimes, Christine Miller, Ben Pearson, and Russ Plott.[4] *Id.*, Ex. 11, Ferm Aff. at 3. Ferm stated "Ms. Bettell's interview demonstrated she would be very passionate about the position." *Id.* at 4.

Ferm testified the interview questions came from the hiring toolkit on the HR website or were drafted by Ferm and Zach LaPlante. *Id.* at 39-40, 82-83. All of the applicants were asked the same questions with no follow-up. *Id.* at 81. Within the group hired for the CAPCO positions, there were people who scored higher than Thompson, lower than Thompson, and the same as Thompson. *Id.* at 90. Ferm also testified that there were subjective elements to the interview scoring. *Id.* at 49. Further, he acknowledged that the candidates' appearance and attire was a consideration. *Id.* at 50-51.

---

[4] Evidence in the record indicates that Charity Bettell is female, forty-ish, and white. Filing No. 26, Index of Evid., Ex. 5, Ferm Dep. at 55. Matt Cole is under forty and white. *Id.* Garfield Coleman is African-American, over forty. *Id.* at 56. Joe Clements is Caucasian and over forty. *Id.* at 55. Chris Heimes is Caucasian and close to forty. *Id.* at 56. Plott is Caucasian and fifty-five-ish. Id. at 56. Chris Miller is female, Caucasian, age fifty. *Id.* Pearson is Male, Caucasian and may be under forty. *Id.*

Thompson filed an NEOC charge on June 20, 2012, alleging discrimination based on age, gender and race, harassment, and retaliation. *Id.,* Ex. 28, Complaint, Ex. A, EEOC Charge. There is also evidence that she had earlier complained to Vickie Lien, OPPD Staffing Specialist, that she felt she was being "bullied" by Dukarski. *Id.*, Ex. 2, Thompson Dep. at 43, 190. She testified she observed younger white males treated differently than she had been treated by Dukarski. *Id.* at 264. Thompson also testified that she was assigned tasks by Dukarski for which she did not have training and was given unrealistic deadlines. *Id.* at 146-49.

The plaintiff also testified she was intimidated and subjected to harassment by another OPPD employee, Kelly Daughenbaugh, a white male in his 30s. *Id.* at 114-15, 116-21; Ex. 28, NEOC Complaint at 1. She also testified about an allegedly harassing incident involving David Fairbanks, a Senior Nuclear Planner, in March 2012. *Id.* at 125-27. She testified that Fairbanks yelled and cussed at her. *Id.* at 128-31; *see also* Ex. 28, EEOC charge at 1.

II.   LAW

Summary judgment should be granted when—viewing the facts most favorably to the nonmoving party and giving that party the benefit of all reasonable inferences—the record shows that there is no genuine issue of material fact. *See* Fed. R. Civ. P. 56(c); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (*en banc*). An issue is "genuine" if the evidence is sufficient to persuade a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "conclusory" affidavit, standing alone, cannot create a genuine issue of material fact precluding summary judgment. *Allen v. Entergy Corp.*, 181 F.3d 902, 906 (8th Cir.

8

1999). The court should deny summary judgment if there is sufficient evidence for a jury to return a verdict for the non-moving party. *Fercello*, 612 F.3d at 1077. The substantive law will determine which facts are material. *Id.*

Courts must "adhere to the axiom that in ruling on a motion for summary judgment, '[t]he evidence of the non[-]movant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Tolan v. Cotton*, 572 U.S. —, —, 134 S. Ct. 1861, 1863 (2014) (per curiam) (quoting *Anderson,* 477 U.S. at 255). At summary judgment, the court's function is not to weigh the evidence and determine the truth of the matter itself, but to determine whether there is a genuine issue for trial. *Tolan*, 572 U.S. at —, 134 S. Ct. at 1866 (internal marks omitted) (quoting *Anderson*, 477 U.S. at 249). "A jury—not a district or appellate judge—must resolve any genuine factual disputes underpinning a legal question." *Davis v. Ricketts*, — F.3d —, 2014 WL 4211355, *6 (8th Cir. August 24, 2014) (Riley, J., concurring in part and dissenting in part).

Absent proof of direct evidence of discriminatory motive, a discrimination action is analyzed under the *McDonnell Douglas* burden-shifting framework, and the claim proceeds in three stages. See *Jackson v. United Parcel Service, Inc.*, 643 F.3d 1081, 1086 (8th Cir. 2011); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973). First, the plaintiff must establish a prima facie case of discrimination. *Id.* at 802; *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993).

Second, the defendant may rebut the prima facie case by articulating a non-discriminatory rationale for its action. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254–55 (1981). A defendant may meet this burden by offering admissible

8:13-cv-00106-JFB-FG3 Doc # 41 Filed: 10/28/14 Page 10 of 14 - Page ID # 796

evidence sufficient for the trier of fact to conclude that petitioner was fired because of a reason other than discrimination. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000). "This burden is one of production, not persuasion; it 'can involve no credibility assessment.'" *Id.* (quoting *St. Mary's Honor Ctr.,* 509 U.S. at 509).

Third, the plaintiff must prove that the defendant's proffered rationale was merely pretext for discrimination. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 143 (2000) (stating that once the defendant meets its burden, the McDonnell Douglas framework—with its presumptions and burdens—disappears and the sole remaining issue is "discrimination *vel non.*") "The plaintiff then has the 'full and fair opportunity to demonstrate,' through presentation of [her] own case and through cross-examination of the defendant's witnesses that she was discriminated against on the basis of her [race, gender or age]." *Hudson v. United Sys. of Ark., Inc.,* 709 F.3d 700, 704 (8th Cir. 2013) (quoting St. Mary's Honor Ctr., 509 U.S. at 507-08).

In other words, the question is whether a "prohibited reason, rather than the proffered reason, actually motivated the employer's action*." Barber v. C1 Truck Driver Training, LLC,* 656 F.3d 782, 792 (8th Cir. 2011). The plaintiff's "burden to show pretext 'merges with the ultimate burden of persuading the court that [she was] the victim of intentional discrimination.'" *Torgerson*, 643 F.3d at 1046 (quoting *Burdine*, 450 U.S. at 256); *E.E.O.C. v. Audrain Health Care, Inc.,* 756 F.3d 1083 (8th Cir. 2014).

The plaintiff may establish that she "was the victim of intentional discrimination 'by showing that the employer's proffered explanation is unworthy of credence.'" *Reeves,* 530 U.S. at 143. "Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional

discrimination, and it may be quite persuasive." *Id.* at 147. Establishing a prima facie case and producing sufficient evidence to reject the employer's explanation may permit a finding of liability. *Id.* at 149.

Under the *McDonnell Douglas* framework, to establish a prima facie case for failure to promote, a plaintiff must show that: (1) she is a member of a protected group; (2) she applied for promotion to a position for which the employer was seeking applicants and for which she was qualified; (3) she was not promoted; and (4) similarly situated employees who did not belong to the protected group were promoted instead. *Bennett v. Nucor*, 656 F.3d 802, 819 (8th Cir. 2011). *See Id.* at 864. To satisfy the second element of a prima facie failure-to-promote case, a plaintiff must show that she is at least "minimally qualified" for the promotion at issue. *Fields v. Shelter Mut. Ins. Co.*, 520 F.3d 859, 864 (8th Cir. 2008); *Turner v. Honeywell Fed. Mfg. & Techs., LLC*, 336 F.3d 716, 720–21 (8th Cir. 2003). Conclusory assertions that the plaintiff was qualified are insufficient. *Fields*, 520 F.3d at 864; *Rose–Maston v. NME Hosps., Inc.*, 133 F.3d 1104, 1110 (8th Cir. 1998).

Employment decisions based on subjective, rather than objective, criteria carry little weight in rebutting charges of discrimination. *See Moore v. Board of Educ. of Chidester, Sch. Dist. No. 59*, 448 F.2d 709 (8th Cir. 1971). The Eighth Circuit Court of Appeals has "cautioned against the use of subjective considerations" in hiring and promotion decisions "because they are easily fabricated." *Chambers v. Metro. Prop. & Cas. Ins. Co.*, 351 F.3d 848, 858 (8th Cir. 2003).

III.  DISCUSSION

The court first finds that the plaintiff satisfied her burden of presenting a prima facie case.  At the time of the incidents at issue, she was a member of the class protected by Title VII by virtue of her race and gender and protected under the ADEA by virtue of her age.  OPPD management testified that in order to be interviewed, a candidate had to be qualified for the position.  Accordingly, Thompson has shown she was qualified for the positions for which she interviewed.  With respect to each of those positions, people who were either younger, white or male were hired.  In the context of the overall scenario, she has also presented circumstantial evidence of discrimination in connection with the positions for which she was not granted an interview in that she has shown that the initial screening criteria were subjective.

OPPD relies on the contention that it hired more-qualified candidates as its nondiscriminatory reason for failing to hire the plaintiff.  The defendant's proffered nondiscriminatory reason was that other candidates were "a better fit" for the positions. Based on the evidence of record, there is a factual dispute on whether that is the case. In some instances, Thompson has raised an issue of fact as to whether she was as qualified, if not more qualified, than the candidates hired.  The evidence shows that although OPPD endeavored to devise an objective system of hiring, its process was still based on subjective assessments.  The record shows that subjective criteria were used at many stages of the process, from drafting the position description, determining initial screening criteria or "core competencies," devising the questions to scoring the responses.  The affidavits of managers stating that they did not consider race, age, or

12

gender in making their decisions are of little probative value. Resolving the ultimate issue will involve assessments of credibility.

Thompson has presented evidence that, if believed, could show that the defendant's proffered explanation was false. With respect to one position, she presented evidence that she scored higher in the interview process than the person hired. There is also evidence that for one position she was referred by the automated screening process but was not interviewed based on the hiring manager's subjective decision that she was not qualified. The evidence that she applied for numerous other positions but was not granted interviews is evidence that further bolsters her position. There is evidence she was rejected for some positions because of lack of training, particularly leadership training, and she contends OPPD denied her the training. She has also presented evidence that she was treated differently that white, male, or younger employees.

The court finds that the plaintiff has presented evidence, viewed in the light favorable to her, from which a reasonable jury could find that OPPD's explanations were pretextual and its decisions were discriminatory. The evidence presented by OPPD is not essentially undisputed, the plaintiff challenges the defendant's version of events and has presented evidence sufficient to create factual disputes on her qualifications, the qualifications necessary for performance of the positions, subjectivity in hiring, pretext and intent.

IT IS ORDERED that:

1. Defendant's motion for summary judgment (Filing No. 24) is denied.

2. Defendant's objection (Filing No. 35) as denied as moot.

13

3.  The Clerk of Court is directed to terminate plaintiff's response (Filing no. 30) as a pending motion.

Dated this 28th day of October, 2014.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge